## DALE *v.* MEDCALF.

A sale under a *fi. fa.*, by the consent of the defendant, made after the return-day of the writ, is void as against a subsequent purchaser at sheriff's sale under an encumbrance which would have been discharged by the former sale, had it been valid; and the act of 1845, so far as it professes to validate such sale, is unconstitutional.

In error from the District Court of ·Allegheny.

The plaintiff held under a sheriff's sale in January, 1846, under a mortgage by Davis, recorded February 22, 1839.

The defendant's title was a judgment entered against Davis on the 22d February, 1839, on which a *fieri facias* issued to November Term, 1840, under which a levy was made, and a written agreement by defendant endorsed waiving condemnation, and that a sale might be made without a *venditioni exponas.* A sale was accordingly made and returned. The execution-docket showed that this sale was set aside, and a sale directed according to a recorded plan of the lots. An *alias fieri facias* then issued, to which the sheriff returned that he had levied (on the same property), and, by virtue of the writ and of the agreement endorsed on the *fieri facias,* had sold the property to Patterson. But it appeared that this sale was made after the return-day of the *alias fieri facias.* The validity of this sale was the only question raised; the court (HEPBURN, J.) sustained it under the act of 1845, though he expressed doubts of the constitutionality of that act. The evidence showed that Patterson conveyed to Wynne, who was the plaintiff in the judgment under which the sale was made; and, so far as appeared, he held the defendant's title.

*T. Williams,* for plaintiffs in error, cited 4 Yeat. 108, 212; Gibbs *v.* Neely, 7 W. 305; 1 W. 388; Cash *v.* Tozer, 1 W. & S. 519; 2 Ib. 278; 4 Ib. 223; 1 S. & R. 92; 10 Ib. 261; 2 Binn. 80; Bald. 246; 2 Pet. 480; 8 Ib. 25; 2 Barr, 22; 5 Ib. 145.

*Woods,* contrà.—7 W. 331, 475; 10 Ib. 1; Hunt *v.* Derling, 8 Ib. 403; 6 Wh. 214, 610; 1 Barr, 183, 218; 1 W. & S. 525; Bald. 207 : 1 S. & R. 92; 15 Ib. 72; 10 Ib. 307.

*Oct.* 2. BURNSIDE, J.—There are two questions arising on the errors assigned, which dispose of this case. The first is, whether the sheriff's sale on the *fieri facias,* after the return-day of the writ, divested the title of the defendant, and passed any title to

the purchaser? 2d. If the title was not divested, and no title passed, is it cured by the act of the 16th of April, 1845?

1st. The act of the 16th of June, 1836, Dunlop, 727, changed the law, and prescribes the proceedings on a *fieri facias.* In the 43d section the sheriff is directed to levy on the defendant's real estate, where there is not sufficient personal property; and the 44th section directs the inquisition to inquire whether the rents and profits will pay beyond all reprizes in seven years; and then the 45th section, which is a proviso to the sections recited, that the defendant in any execution, being at the time of issuing thereof the owner of such real estate, &c., may, by writing filed in the proper court, dispense with and waive an inquisition; and the sheriff, after due notice, is authorized to sell on the writ of *fieri facias, before the return-day thereof.* (I give no opinion whether the waiver in this case was sufficient, as, on that question, there is some division in the court. For the consideration of the questions arising on the record, I assume it to be good.) The case of Cash *v.* Tozer, 1 W. & S. 519, was decided in Sunbury, in 1841, was well considered, and it was then solemnly settled that a sale of real estate upon a *fieri facias,* after the return-day thereof, although continued by adjournment from day to day, is contrary to the act of Assembly, and void, and vested no title in the purchaser. That case was reported in 1842, nearly three years before the passage of the act of 1845. The Chief Justice delivered the opinion of the court in his usual able manner; and the conclusion was, that the legislative enactment of 1836 left nothing to interpretation. It was peremptory that the sheriff shall sell before the return-day of the writ. A sale after it was of no more force than if it were made without judgment or execution. The sale under which the defendant claimed was made; and the whole proceeding to affect it was under the act of 1836. The provisions of the act were disregarded; the sale was void. When made by the sheriff, his writ was spent. It was exhausted, and was of no more virtue for the purpose to which it was applied, than if it had never existed. The estate of the defendant, by that sale, was not divested, because the sale was not made as the legislature had required.

2d. As the sale was void, and the sheriff's deed passed no title, was it cured, and did the title pass by the act of the 16th April, 1845? (Dunlop, 950.) The words of the act are, "All sales of real property within this commonwealth, made since the passage of the act to which this is a supplement, by sheriffs or coroners after the return-day of their several writs of *levari facias,* FIERI FACIAS, *ven-*

K

*ditioni exponas,* or other writ of execution, shall not, on account of such irregularity in such proceeding, be set aside, invalidated, or in any manner affected, and such sales so made shall be held as good and valid to all intents and purposes, as if such sale had been made on or before the return-day of the writs respectively; but this section shall not affect any sale heretofore adjudged to be illegal in any court." Is this constitutional? The sale being made contrary to legislative enactment, and declared by this court utterly void, can the legislature validate such a sale to the injury of another party? In plain English, can they take one man's property and give it to another—property which is secured to him by the constitution and laws? In Brown *v.* Hummel, Mr. Justice Coulter has said, an act of Assembly whereby a man's property is swept away from him without a hearing, trial, or judgment, or the opportunity of making known his rights, or producing his evidence, is not "*the law of this land,*" within the meaning of the ninth section of the declaration of rights, or set forth in the constitution of Pennsylvania. *By the law of the land is meant the law* of an individual case, as established on a fair, open trial, or an opportunty given for such trial in open court, and by due process of law. But the case of Menges *v.* Wertman, 1 Barr, 218, as well as others, are relied on. Menges *v.* Wertman was decided after I came on the bench. Mr. Justice Rogers and Mr. Justice Kennedy were for deciding the act unconstitutional and void; Chief Justice Gibson and Mr. Justice Sergeant were for affirming the judgment. I was in doubt, but finally agreed with the latter, and the judgment was affirmed. I am afraid that the decision in that case has had most mischievous consequences. When I agreed to that decision, my mind ran over the acts in favour of imperfect acknowledgments of deeds by married women, which introduced a forced construction of the constitution which could not well be changed. There were other decisions which bore on the case of Menges *v.* Wertman, such as Smith *v.* Merchand's Executors, 7 S. & R. 260, where an act to enable purchasers of defective tax-titles to receive back from the county commissioners what they had paid over and above the taxes, was sustained, though the purchaser had no previous title to recover. In Underwood *v.* Lilly, 10 S. & R. 97, a retrospective act, confirming certain judgments erroneously entered on the last day of the term in York county, was sustained. In Estep *v.* Hutchman, 14 S. & R. 435, a private act authorizing a guardian to convey land sold by the father of his ward, and paid for by the purchaser, was sustained. In Bleakney *v.* The Bank of Greencastle, 17 S. & R. 64,

an act validating suits pending was sustained. In the case of the Pittsburgh and Ebensburgh Turnpike Co. *v.* The Commonwealth, 2 W. 433, Mr. Justice Rogers, delivering the opinion of the court, took the broad ground, that where a right exists without a remedy the legislature may constitutionally provide it; a right, without a legal power to enforce it, is a moral obligation, to which, it is said in Menges *v.* Wertman, the legislature may add a legal obligation. After this series of cases, it would have been difficult to come to any other conclusion, than that the legislature might give such a sanction. The only thing that seemed peculiar to the act in Menges *v.* Wertman, was that it was the second time, if not the first time the legislature had assumed judicial power to interfere between parties directly by name. But that was merely a difference in form. These acts, though they are general in form, are always intended to operate on particular cases. They are procured by lawyers to help them in particular cases, and they are passed by the legislature without hearing the parties to be affected, but with the express understanding of every honest member, of leaving the question of their constitutionality to the judiciary. The growing frequency of these invasions of private rights renders it necessary that they should be resisted and disregarded where they infringe the constitution. But it is easy to distinguish this case from Menges *v.* Wertman. There the sheriff's vendee had purchased, and under a mistake of *fact*, paid for, a part of the land which was supposed to be within the jurisdiction of the court which had issued the execution. The purchase-money was applied to the former owner's debts, and as he had the benefit of the sale, it was thought the legislature had power to prevent him from disturbing the purchaser. In this case the purchaser bought in the face of a recent statute which he was bound to know and obey, and purchased with his eyes open. He has no moral claim to have the sale made good. The act of the legislature which covers this case is unconstitutional and void.

Judgment reversed, and a *venire de novo* awarded.